**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IRVING G. MURRAY,** | ) | |
| **Plaintiff** | ) | **C.A. No. 15-48 Erie** |
| | ) | |
| **v** | ) | **District Judge Rothstein** |
| | ) | **Magistrate Judge Baxter** |
| **PENNSYLVANIA DEPARTMENT OF** | ) | |
| **CORRECTIONS, et al.,** | ) | |
| **Defendants** | ) | |


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


### I.    RECOMMENDATION

It is respectfully recommended that:

      1.     The Corrections Defendants' motion for summary judgment [ECF No. 71], be granted; and

      2.     The motion for summary judgment filed by Defendants Dr. Robert Maxa, Wexford Health Sources, Inc., and Correct Care Solutions, Inc. [ECF No. 75], be granted.

It is further recommended that, pursuant to the authority granted the Court by the

Prison Litigation Reform Act, Plaintiff's claims against Defendant Ronald Bryant be dismissed,

*sua sponte*, for Plaintiff's failure to serve said Defendant in accordance with Rule 4(m) of the

Federal Rules of Civil Procedure and/or for failure to state a claim against him upon which relief

may be granted.

### II.    REPORT

#### A.    Relevant Procedural History

Plaintiff, an inmate formerly incarcerated at the State Correctional Institution at Albion,

Pennsylvania ("SCI-Albion"),[1] initiated this civil rights action on February 4, 2015, by filing a *pro se* complaint, pursuant to 42 U.S.C. § 1983. [ECF No. 10]. On or about June 30, 2015, Joseph Froetschel, Esquire, accepted representation of Plaintiff in this matter [ECF No. 45] and officially entered his appearance on July 8, 2015 [ECF No. 48]. Attorney Froetschel subsequently filed a first amended complaint on behalf of Plaintiff, which superseded the original complaint and is the operative pleading in this case. Named as Defendants in the first amended complaint are: Pennsylvania Department of Corrections ("DOC"); John E. Wetzel, Secretary of the DOC ("Wetzel"); Nancy A Giroux, former Superintendent at SCI-Albion ("Giroux"); Michael Clark, the current Superintendent at SCI-Albion ("Clark"); Christine Zirkle, Corrections Health Care Administrator at SCI-Albion ("Zirkle"); Melinda Adams, Deputy Superintendent at SCI-Albion ("Adams"); Ronald Bryant, former Deputy Superintendent at SCI-Albion ("Bryant"); Correct Care Solutions, Inc., the current health care provider at SCI-Albion ("CCS"); Wexford Health Sources, Inc., the former health care provider at SCI-Albion ("Wexford"); and Robert L. Maxa, D.O., an employee of CCS and/or Wexford who serves as Medical Director at SCI-Albion ("Maxa").[2] For ease of reference, Defendants Wexford, CCS, and Maxa, will be collectively referred to as "Medical Defendants," and all other Defendants will be collectively referred to as "Corrections Defendants."

In his *pro se* complaint, Plaintiff claims that Defendants were deliberately indifferent to

---

[1]
According to the docket, Plaintiff current resides at Gaudenzia House in Philadelphia, Pennsylvania.

[2]
According to the docket entries in this case, it appears that Defendant Bryant was never served with the Complaint, nor has an attorney entered an appearance on his behalf.

his serious medical needs in violation of the eighth amendment to the United States Constitution by failing to properly treat and monitor his Hepatitis C condition. In addition, Plaintiff asserts a claim under Article I, § 13 of the Pennsylvania Constitution against all Defendants, and a state law medical malpractice claim against Defendants Wexford and CCS. As relief for his claims, Plaintiff seeks declaratory and injunctive relief, and monetary damages.[3]

On April 22, 2016, the Corrections Defendant filed a motion for summary judgment [ECF No. 71], arguing that Plaintiff is unable to establish his claims against them as a matter of law. On the same date, the Medical Defendants filed their own motion for summary judgment [ECF No. 75], contending that Plaintiff failed to exhaust his administrative remedies with regard to his claims against them and/or is unable to establish such claims as a matter of law. Plaintiff has since filed a timely brief in opposition to both motions. [ECF No. 78]. This matter is now ripe for consideration.

**B.**     **Relevant Factual History**[4]

Plaintiff alleges that he contracted the Hepatitis C virus ("HCV") in or around 2000 (ECF No. 60, First Amended Complaint, at ¶ 17); however, it appears he did not receive any treatment for HCV prior to 2010. (ECF No. 73, Corrections Defendants' Statement of Material Facts, at ¶ 37). In May 2010, Plaintiff was referred to Dr. Eyob Feyssa at the Albert Einstein Medical Center in Philadelphia, Pennsylvania, for evaluation of his HCV. At that time, Dr. Feyssa found

---

[3] Plaintiff's request for injunctive relief is now moot as a result of his release from DOC custody.

[4] The factual history recited herein has been gleaned from the Correction Defendants' Statement of Material Facts Not in Dispute [ECF No. 73] and the Concise Statement of Material Facts filed by Defendants Wexford, CCS, and Maxa [ECF No. 76], to the extent the same have been admitted or unopposed by Plaintiff and/or are amply supported by the evidence of record.

no symptoms of advanced liver disease, and noted that blood test lab results reflected liver values within normal limits. (Id. at ¶ 38). On September 23, 2010, Dr. Feyssa deemed Plaintiff an unsuitable candidate for HCV clinical treatment because of his underlying depression, and bipolar and antidepressant medications, as well as his hypertriglyceridemia condition that increased the risk of complications. (ECF No. 74-1, at p. 29). Plaintiff was advised to get a psychiatric evaluation and clearance. (Id.).

Plaintiff was not seen again by Dr. Feyssa until February 21, 2012, at which time it was noted that Plaintiff had no symptoms of advanced liver disease, except for marked weight loss, and further diagnostic tests were ordered to assess him for interferon-based treatment. (Id. at p. 31). On June 19, 2012, Dr. Feyssa noted that, based on his evaluation of Plaintiff's diagnostic test results and unstable psychiatric condition, Plaintiff was not a suitable candidate for intensive interferon-based treatment because of the risk of psychiatric decompensation from interferon therapy. (Id. at p. 34). On that same date, Plaintiff was committed to the DOC and confined at SCI-Graterford. (ECF No. 73, at ¶ 46). Plaintiff was subsequently transferred to SCI-Albion on September 27, 2012. (Id. at ¶ 47).

Plaintiff was incarcerated at SCI Albion from September 27, 2012 to October 26, 2015, with the exception of approximately five weeks from April 18 through May 24, 2013, and approximately two weeks from January 3 through January 17, 2014. (ECF No. 73, at ¶ 7). Upon his transfer to SCI-Albion, Plaintiff was screened and evaluated for the Hepatitis C virus ("HCV"), and was assigned to the institution's Chronic Hepatitis Clinic, where his condition was reviewed and evaluated on at least an annual basis. (ECF No. 73, at ¶¶ 48-49). Prior to each of these annual clinic visits, Plaintiff was tested for several markers used to determine

symptomology and progression of HCV. (Id. at ¶ 50).

On January 15, 2013, physician assistant Daniel Telega referred Plaintiff to psychiatry to obtain clearance for HCV treatment under the then-existing protocol. (ECF No. 76, Medical Defendants' Concise Statement of Material Facts, at ¶ 9). On February 20, 2013, Plaintiff was seen by psychiatrist Robert Sena, M.D., who noted that Plaintiff had disorganized and paranoid thought processes, impaired judgment, and poor insight. (Id. at ¶ 15). Dr. Sena diagnosed Plaintiff with undifferentiated schizophrenia and opined that Plaintiff was not a candidate for HCV treatment due to his "psychotic condition." (Id.). On March 23, 2013, and April 3, 2013, Dr. Valerie Gilreath attempted to see Plaintiff in the Chronic Clinic, but he refused to be seen. (ECF No. 76, at ¶¶ 17-18).

On October 23, 2013, Plaintiff was seen in the Chronic Clinic by Jean Oakes, RN, an Infection Control Nurse, who noted that Plaintiff complained of weakness, anorexia, and weight loss, but not abdominal pain or swelling, ankle swelling, or bleeding. (Id. at ¶ 35). A liver biopsy was not indicated, and further treatment was not found necessary. (Id.). On November 1, 2013, Plaintiff was referred to Defendant Maxa after Plaintiff requested treatment for HCV. (ECF No. 73, at ¶ 54). Plaintiff was seen again by Nurse Oakes on December 3, 2013, regarding HCV treatment, but the appointment was terminated because Nurse Oakes was unable to have an actual discussion of treatment with Plaintiff because he "brought numerous court papers and state[d] that he will make the medical staff lose their jobs." (Id. at ¶ 55).

On December 10, 2013, Plaintiff sent an Inmate Request to Staff form to Defendant Adams asking to be seen by a gastroenterologist to obtain "Hepatitis-C medications." (ECF No. 74-3, at p. 2). This request was forwarded to Defendant Zirkle for a review response, which was

provided on December 12, 2013, as follows:

> Discussion with Dr. Maxa, Ms. Oakes ICN and psychiatry & psychology, you are not found to be a suitable candidate for interferon-based intensive treatment. Upon review, you remain non-compliant with seizure and psychiatric medications for stabilization. This was also the same requirement you received on 6-19-12 from Dr. Feyssa from the Center for Liver Disease and Transplantation. Also was evaluated 2010 and needed to psychiatrically be clear and normal triglycerides. On 1/15/13 you were referred to Dr. Sena & due to psychosis was not medically clear. You are scheduled for yearly HepC clinic Jan 2014.

(Id.).

On February 24, 2014, Plaintiff underwent a Chronic Hepatitis Profile, which revealed positive findings for Hepatitis AB (Total), Hepatitis B Surface AB, and Hepatitis C AB, and negative findings for Hepatitis A IGM AB, Hepatitis B Surface AG, and Hepatitis C Core AB. (ECF No. 76, at ¶ 51). Three days later, Plaintiff was seen by his psychiatrist, Dr. Gottesman, whose diagnosis of Plaintiff was changed from bipolar to "schizoaffective disorder, bipolar type," because Plaintiff presented with persistent delusions "24/7," even in the absence of prominent mood symptoms. (Id. at ¶ 52).

On or about June 20, 2014, Plaintiff wrote a letter to the DOC regarding his concerns about waiting for the DOC to approve a new treatment protocol for HCV. (ECF No. 73, at p. 59). In response, Plaintiff received a letter from Christopher Oppman, the Director of the DOC's Bureau of Health Care Services ("BHCS"), dated July 3, 2014, stating that Plaintiff's existing treatment was deemed appropriate by BHCS staff, and that all HCV patients would continue to be monitored in the Chronic Clinic while new treatment options were being evaluated. (Id. at ¶¶ 60-61).

On October 22, 2014, Plaintiff was seen at the Chronic Hepatitis Clinic, at which time he

complained that he felt he was being refused treatment. The physician's assistant informed him that he was not a treatment candidate at that time. (ECF No. 76, at ¶ 73). On January 6, 2015, Plaintiff sent an Inmate Request to Staff form to Defendant Clark seeking a new Hepatitis C medication called Harvoni, which request was forwarded to Defendant Zirkle for review and response. (ECF No. 74-3, at pp. 13-20). On the same date, Plaintiff sent a similar inmate request to Defendant Maxa, (ECF No. 74-3, at p. 22). Both Defendants Zirkle and Maxa responded that there was no existing Hepatitis C treatment available in the DOC at that time, but that new procedures were being established that might include newly available medications. (ECF No. 73, at ¶¶ 65-66).

On January 23, 2015, Plaintiff filed a grievance (# 549432) accusing staff of deliberate indifference for not prescribing him the anti-Hepatitis C drug Harvoni, and for denying him a liver biopsy, because they are too expensive; and for falsifying bloodwork results to justify the DOC's denial of a liver biopsy. (ECF No. 76, at ¶ 79). Plaintiff then filed the instant lawsuit on February 4, 2015. On February 18, 2015, Plaintiff received an initial review response to his grievance (#549432) indicating that the DOC was re-evaluating its treatment protocol for Hepatitis C in light of new guidance issued by the American Association of Liver Diseases and the Infectious Diseases Society of America, and that HCV patients would continue to be monitored while a new treatment protocol was being evaluated and developed. (ECF No. 77-4, at p. 7).

On April 17, 2015, Plaintiff was seen by Defendant Maxa after requesting a special appointment to discuss his HCV condition. Defendant Maxa assessed Plaintiff with Hepatitis C with "no indication of decompensation," and advised Plaintiff that HCV treatment was on hold

pending DOC approval of new protocol and medication, and that, once approved, the new treatment would be provided to those who qualify. (ECF No. 73, at ¶ 67; ECF No. 76, at ¶ 89). Plaintiff had a follow-up visit with Defendant Maxa on May 8, 2015, at which time Maxa noted that Plaintiff was not a candidate for HCV treatment, and that his dyslipidemia and seizure disorder were "at or near goal" and controlled. (ECF No. 76, at ¶ 91).

On August 18, 2015, Plaintiff's lab work revealed that all values relative to his HCV condition were within normal limits, except for an elevated creatinine level. (ECF No. 76, at ¶ 97). On August 25, 2018, Plaintiff was seen by a physician's assistant, at which time he asked for a liver biopsy "despite his labs being well into fair ranges." (Id. at ¶ 98). On October 14, 2015, Plaintiff was seen for the last time by Defendant Maxa in the Chronic Hepatitis Clinic, who noted that Plaintiff was not a candidate for treatment by virtue of his imminent release from DOC custody on October 26, 2015. (Id. at ¶ 101). The DOC subsequently adopted an interim HCV treatment protocol, effective November 20, 2015.

**C.    Standard of Review**

Federal Rule of Civil Procedure 56(c)(2)  provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all

reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

"Where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact 'by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Player v. Motiva Enterprises, LLC, 240 Fed.Appx 513, 522 n4 (3d Cir. 2007) quoting UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).

## D. Discussion

### 1. Exhaustion of Administrative Remedies

The Medical Defendants argue that summary judgment should be granted in their favor on all claims against them due to Plaintiff's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), which provides:

> no action shall be brought with respect to prison conditions under section
> 1983 of this title ... by a prisoner confined in any jail, prisons, or other
> correctional facility until such administrative remedies as are available are

exhausted.

Id.[5]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[7]

---

[5]
It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 216 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[6]
Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[7]
There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

<u>**a.**</u>        <u>**The Administrative Process Available to State Inmates**</u>

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who

responds in writing within ten business days. Second, the inmate must timely submit a written

appeal to intermediate review within ten working days, and again the inmate receives a written

response within ten working days. Finally, the inmate must submit a timely appeal to the Central

Office Review Committee within fifteen working days, and the inmate will receive a final

determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir.

1997), aff'd. 532 U.S. 731 (2001).

### b. Analysis

In support of their motion for summary judgment, the Medical Defendants have

submitted copies of Plaintiff's grievance records pertaining to the claims raised in this case [ECF

Nos. 77-3 and 77-4], which records have been duly authenticated by the Affidavit of Helen I.

Shambaugh, Grievance Review Officer at the DOC Secretary's Office of Inmate Grievances &

Appeals [ECF No. 77-6]. The grievance records verify that Plaintiff filed two grievances related

to the alleged denial of treatment for his HCV condition: Grievance No. 487208, dated

November 29, 2013 [ECF No. 77-3], and Grievance No. 549432, dated January 23, 2015 [ECF

No. 77-4]. The first grievance (#487208) was dismissed at the final appeal level because it was

untimely and was not accompanied by proper documentation (ECF No. 77-3 at p. 1). Thus, it was

not properly exhausted in accordance with the applicable administrative process.

The second grievance (#549432) was filed only twelve days before the initiation of the

present lawsuit and was not fully exhausted until July 10, 2015, well after this lawsuit was

underway. It is well-settled that exhaustion of administrative remedies must be fully completed

before the filing of a lawsuit. See McCarthy, 503 U.S. at 144; Ahmed v. Dragovich, 297 F.3d

201, 209 (3d Cir. 2002) (holding that exhaustion requires completion of the entire administrative

13

remote process prior to filing suit); <u>Johnson v. Jones</u>, 340 F.3d 624, 627-28 (8th Cir. 2003)

(collecting cases and holding that "the district court must look to the time of filing, not the time

the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion

was not completed at the time of filing, dismissal is mandatory"); <u>Neal v. Goord</u>, 267 F.3d 116,

122 (2d Cir. 2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by

exhausting administrative remedies after filing her complaint in federal court). Accordingly,

summary judgment should be granted in favor of the Medical Defendants and against Plaintiff on

all claims against them due to Plaintiff's failure to properly exhaust his administrative remedies

before the filing of the present lawsuit.[8]

## 2. Eleventh Amendment Immunity

The Corrections Defendants assert that Plaintiff's claims against Defendant DOC, and the

individual Corrections Defendants in their official capacities, are barred by Eleventh Amendment

immunity. The Court agrees.

The Eleventh Amendment proscribes actions in the federal courts against, *inter alia*,

states and their agencies. <u>Laskaris v. Thornburgh</u>, 661 F.2d 23 (3d Cir. 1981)(Pennsylvania); <u>Mt.
Healthy City Board of Education v. Doyle</u>, 429 U.S. 274 (1977) (state agencies). "Unless a State

has waived its Eleventh Amendment immunity or Congress has overridden it... a State cannot be

---

[8] Plaintiff's request for an equitable exception to the exhaustion requirement is not permissible. Although the Third Circuit has held that interference with an inmate's attempts at exhaustion may impact the administrative remedy process in such a way as to make it essentially unavailable, <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), no such circumstances are present here. At most, Plaintiff argues that the final appeal of his first grievance was dismissed "permissively," because the central office could have chosen to hear and decide Plaintiff's appeal without all of the required documentation attached; however, this argument bypasses the finding that Plaintiff's grievance appeal was untimely, thus barring review. Moreover, the decision to dismiss a grievance due to an inmate's failure to fully comply with the requirements of the administrative remedy process is not tantamount to interference with Plaintiff's ability to access the process.

sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985), citing Alabama v. Pugh, 438 U.S. 781 (1978).

It is well-settled that the DOC, which administers all state correctional institutions, is an agency or arm of the Commonwealth of Pennsylvania and is, thus, entitled to the same Eleventh Amendment immunity that the Commonwealth enjoys. See Steele v. Pennsylvania, 2009 WL 614800 at *8 (W.D.Pa. Mar. 6, 2009). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued, Wilson v. Vaughn, 1996 WL 426538 at *1 n.2 (E.D.Pa. July 30, 1996), nor has Congress expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, 1998 WL 151803 at *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999) (Table). Moreover, as a state agency, Defendant DOC is not a "person" against whom a civil rights action may be brought under Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Accordingly, summary judgment should be granted in favor of Defendant DOC and against Plaintiff.

In addition, the individual Corrections Defendants are also from suit under the Eleventh Amendment, to the extent Plaintiff is suing them in their official capacities. It is well settled that suits for damages by individuals against, *inter alia*, state officers acting in their official capacities are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 165-67 (1985) (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000) (holding that individuals are barred from seeking monetary damages from state governments or state agencies). See also Bey v. Pennsylvania Department of

Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

Thus, summary judgment should also be granted in favor of the individual Corrections Defendants and against Plaintiff, to the extent Plaintiff is suing said Defendants in their official capacities.

### 3. Personal Involvement of Individual Corrections Defendants

The individual Corrections Defendants argue that Plaintiff's Eighth Amendment deliberate indifference claim against them must be dismissed because Plaintiff has failed to establish their personal involvement in the alleged constitutional violation at issue in this case.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir.2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005), quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). See Ruff v. Health Care Adm'r, 441 F. App'x 843, 846 (3d Cir.2011) (per curiam) ("[t]o be liable under § 1983, a defendant must have some personal involvement in the underlying unconstitutional conduct").

See also Kaucher v. County of Bucks, 455 F.3d 418, 432 n. 7 (3d Cir.2006), quoting Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir.2005) ("[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights").

Here, throughout his amended complaint, Plaintiff merely claims that "Defendants" took, or failed to take, various actions to treat his HCV condition, without specifying the alleged actions or inactions of each individual Defendant. Thus, it is unclear how each of the individual Corrections Defendants was allegedly involved in the alleged failure to provide medical treatment. Moreover, none of the Corrections Defendants are considered medical personnel.[9] The Third Circuit has held that prison officials who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). In Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), the Third Circuit expanded upon its reasoning in Durmer, as follows:

> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Here, Plaintiff's extensive medical records reveal that he was frequently seen, examined, and treated for his HCV condition by Defendant Maxa, as well as former Defendants Stroup and Oakes and other members of SCI-Albion's medical staff, even though he obviously disagreed

---

9

As Health Care Administrator, Defendant Zirkle is considered a non-medical prison official in the context of a Section 1983 denial of medical care claim. See Spencer v. Beard, 2010 WL 608276, *4 n. 5 (W.D.Pa. Feb. 17, 2010), citing Hull v. Dotter, 1997 WL 327551, *4 (E.D.Pa. June 12, 1997); Freed v. Horn, 1995 WL 710529, *3-4 (E.D.Pa. Dec. 1, 1995).

with the medical treatment he was receiving.[10] Thus, the individual Corrections Defendants' alleged failure to intervene in the medical care that was already being provided by medical professionals is insufficient to hold any of them liable for deliberate indifference.

Moreover, to the extent Plaintiff seeks to hold the individual Corrections Defendants liable based upon their failure to properly supervise the medical staff or their involvement in the inmate grievance process, neither basis is sufficient to establish liability for deliberate indifference. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Furthermore, if a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official.  Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

Since there are no allegations establishing any involvement on the part of any of the individual Corrections Defendants apart from the roles as supervisors and/or grievance

---

10

Plaintiff argues that he was not being treated because he was not given the HCV drug protocol and, thus, the individual Corrections Defendants could be held liable for deliberate indifference under the Durmer standard; however, the medical records belie any claim that Plaintiff's condition was not being treated or monitored on a consistent basis. Moreover, the treatment records affirm that Plaintiff was not considered a candidate for HCV

18

respondents, there is no basis upon which any of them may be found liable for deliberate indifference to Plaintiff's serious medical needs. Thus, summary judgment should be entered in favor of the individual Corrections Defendants and against Plaintiff on Plaintiff's Eighth Amendment deliberate indifference claim.

## 4.    Pennsylvania Constitution

To the extent Plaintiff attempts to raise claims for monetary damages under the Pennsylvania Constitution, Pennsylvania does not have a statute equivalent to 42 U.S.C. § 1983 that authorizes private lawsuits based on violations of the Pennsylvania Constitution. While the Supreme Court of Pennsylvania has not yet ruled on the issue of whether there is a private cause of action for damages under the Pennsylvania Constitution, federal courts in this Circuit have considered the issue and consistently held that no such private cause of action exists. See, e.g., Ryan v. General Machine Products, 277 F.Supp.2d 585, 595 (E.D.Pa. 2003); Douris v. Schweiker, 229 F.Supp.2d 391, 405 (E.D.Pa. 2002); Lees v. West Greene School Dist., 632 F.Supp. 1327, 1335 (W.D.Pa. 1986). Thus, Plaintiff's claims against the Corrections Defendants' based on alleged violations of Article I, Section 13 of the Pennsylvania Constitution fail as a matter of law and should be dismissed.


## 5.    Defendant Bryant

As noted earlier, Defendant Bryant was never served in this case, and no attorney has entered an appearance on his behalf. Thus, he has not joined in either pending motion for summary judgment. Nonetheless, Section 1915A(b) of the Prison Litigation Reform Act

---

treatment due to his persistent mental health conditions and/or his lack of symptomology.

("PLRA") provides:

> (b) Grounds for dismissal - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;  or  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.A. § 1915A(b). Under Section 1915A, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so. Nieves v. Dragovich, 1997 WL 698490, at *8 (E.D. Pa. 1997) ("Under provisions of the Prison Litigation Reform Act codified at 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c), the district courts are required, either on the motion of a party or *sua sponte*, to dismiss any claims made by an inmate that are frivolous or fail to state a claim upon which relief could be granted.").

The PLRA also amended the statutory provisions with respect to actions brought by prisoners who are proceeding *in forma pauperis*. See 28 U.S.C. §1915(e)(2)[11]. Under this provision as well, not only is a court permitted to *sua sponte* dismiss a complaint which fails to state a claim, but it is required to do so by mandatory language. See, e.g., Keener v. Pennsylvania Bd. of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir. 1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating *sua sponte* dismissal of *in forma pauperis* actions that are frivolous or fail to state a claim."). In performing a court's mandated function of *sua sponte* reviewing a complaint under 28 U.S.C. § 1915(e) and under § 1915A to determine if it fails to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g.,

---

[11]

Title 28 U.S.C. §1915(e)(2) provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--(B) the action or appeal--(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

Tucker v. Angelone, 954 F. Supp. 134, 135 (E.D. Va. 1977) ("Under 28 U.S.C. §§ 1915A, 1915(e), and 42 U.S.C. § 1997e(c), the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'").

Here, Plaintiff's failure to serve Defendant Bryant within 120 days in accordance with Rule 4(m) of the Federal Rules of Civil Procedure is cause for his dismissal from this case. Furthermore, as with the other Corrections Defendants, Plaintiff has failed to sufficiently allege Defendant Bryant's personal involvement in the alleged constitutional violations so as to state a claim against him upon which relief may be granted. Thus, Defendant Bryant should be dismissed from this case, *sua sponte*, pursuant to the authority granted by the PLRA.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1.   The Corrections Defendants' motion for summary judgment [ECF No. 71], be granted; and

2.   The motion for summary judgment filed by Defendants Dr. Robert Maxa, Wexford Health Sources, Inc., and Correct Care Solutions, Inc. [ECF No. 75], be granted.

It is further recommended that, pursuant to the authority granted the Court by the Prison Litigation Reform Act, Plaintiff's claims against Defendant Ronald Bryant be dismissed, *sua sponte*, for Plaintiff's failure to serve said Defendant in accordance with Rule 4(m) of the Federal Rules of Civil Procedure and/or for failure to state a claim against him upon which relief may be granted.

By virtue of the foregoing, this case should be terminated and the Clerk should mark the case closed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

/s/ Susan Paradise Batxer
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 16, 2016

cc:     The Honorable Barbara Rothstein
        United States District Judge